# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JEFFREY AIDEN MENDENHALL**, | Case No. 6:23-cv-01255-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING** |
| | **IN PART AND DENYING IN PART** |
| v. | **DEFENDANTS' MOTION FOR** |
| | **SUMMARY JUDGMENT** |
| **MS. GRINER**; **MS. HARTMAN**; **MS. CLARK**; **MS. EMORY**; **MR. CAMPOS**; **J. GILLESPIE**; and **SUE WASHBURN**, | |
| Defendants. | |

Jeffrey Aiden Mendenhall, No. 12561303, Oregon State Penitentiary, 2605 State Street, Salem, OR 97310-0505. Pro Se.

David Hall, Senior Assistant Attorney General, Kelly Burris, Assistant Attorney General, and Ellen F. Rosenblum, Attorney General, Oregon Department of Justice, 100 SW Market Street, Portland, OR 97201. Attorneys for Defendants.

**IMMERGUT, District Judge.**

Before this Court is a Motion for Summary Judgment ("Mot.") filed by Eastern Oregon

Correctional Institution ("EOCI") employees Ms. Griner, Ms. Hartman, Ms. Clark, Ms. Emory,

Mr. Campos, Nurse J. Gillespie, and Sue Washburn (collectively, "Defendants"), ECF 25.

Plaintiff Jeffrey Aiden Mendenhall, proceeding pro se, filed this action under 42 U.S.C. § 1983

PAGE 1 – OPINION AND ORDER ON SUMMARY JUDGMENT

for alleged violations of his Eighth and Fourteenth Amendment rights while in custody at EOCI. Complaint ("Compl."), ECF 1 at 3–4. Specifically, Plaintiff brings claims for inadequate medical care against Defendant Gillespie, failure-to-protect against Defendants Griner, Hartman, Clark, Emory, and Campos, and supervisory liability against Defendant Washburn. *See* Response ("Resp."), ECF 35 at 5. In their Motion, Defendants argue that Plaintiff's medical treatment claim fails because he did not exhaust his administrative remedies and he has not established a constitutional violation. Defendants further argue that Plaintiff cannot meet the elements of his failure-to-protect claim. Finally, Defendants argue that the Fourteenth Amendment does not apply to Plaintiff's claims and that his official capacity claims are barred by the Eleventh Amendment.

As discussed below, summary judgment is not warranted on Eleventh Amendment grounds as this Court liberally construes Plaintiff's § 1983 suit for damages to be against Defendants in their individual capacities. This Court also liberally construes Plaintiff's Fourteenth Amendment claims to be brought under the Eighth Amendment because Fourteenth Amendment claims would be barred. Summary judgment is granted on Plaintiff's medical care claim as he failed to exhaust available administrative remedies on that claim. Summary judgment is also appropriate on Plaintiff's failure-to-protect claims against all Defendants except Defendant Campos; Defendants have not shown that Defendant Campos is entitled to qualified immunity as a matter of law.

## BACKGROUND

On September 1, 2021, adult in custody ("AIC") George threw approximately three gallons of 210-degree water on Plaintiff while they were working in the EOCI kitchen. Declaration of Jeffrey A. Mendenhall ("Mendenhall Decl."), ECF 35 at 11. Plaintiff attests that

this attack was unprovoked. *Id.* The attack resulted in first and second degree burns on Plaintiff's chest, neck, face, head, and right forearm. *Id.*; *see also* Medical Records, ECF 35 at 16.

Plaintiff was taken to the medical department upon his request. Mendenhall Decl., ECF 35 at 11. According to Plaintiff, once at medical, an officer asked Defendant Nurse Gillespie: "Are we going to send him to the hospital?" *Id.* Defendant Gillespie allegedly answered: "No." *Id.* Plaintiff states that he then asked to be taken to the hospital, to which Defendant Gillespie allegedly said: "I don't think you need to go." *Id.* Defendant Gillespie gave Plaintiff pain pills and burn cream and sent him back to his housing unit. *Id.*

On September 4, 2021, Defendant Officer Campos noticed Plaintiff's injuries and asked him what happened. Declaration of Leonardo Campos ("Campos Decl."), ECF 26 ¶ 6. Plaintiff attests that Plaintiff responded that he did not know the AIC who threw the hot water on him was and that this AIC must have anger issues. Mendenhall Decl., ECF 35 at 11. According to Plaintiff, Defendant Campos stated: "Yeah, he has anger problems. I've seen him act that way in line." *Id.* According to Defendant Campos, Defendant Campos stated: "[S]ounds like he has some anger problems." Campos Decl., ECF 26 ¶ 8.

Plaintiff states that, as a result of the attack, he has had nightmares and has trouble being around large groups of people. Mendenhall Decl., ECF 35 at 12. Plaintiff declares that he was diagnosed with post-traumatic stress disorder and an anxiety disorder and has to take medication to sleep. *Id.* at 2–3. Plaintiff states that he can no longer work in customer service management, the field that he has worked in for most of his life. *Id.* at 14.

Plaintiff states that he developed an ear infection from the burns. *Id.* at 12. He asserts that he told medical that he had "pus and blood draining from [his] left ear." *Id.* Plaintiff states that he was given "pills" which did not help. *Id.* Plaintiff declares that he eventually received eye drops

for his ear canal, which cleared up the infection but "by that time [his] eardrum was gone." *Id.* Plaintiff states that he went to "sickcall" multiple times about his earn and was repeatedly told that he had a small perforation in his eardrum that would heal on its own. *Id.* at 12–13.

Nine months later, on June 8, 2022, Plaintiff was seen by an ear, nose, and throat specialist ("ENT"), Dr. Flaiz. *Id.* at 13; Medical Records, ECF 35 at 17. Dr. Flaiz diagnosed Plaintiff with a "total perforation" in his left ear that was "apparently" caused by the boiling water AIC threw at Plaintiff. Medical Records, ECF 35 at 17–19. Dr. Flaiz wrote in the chart that Plaintiff "needs [a] tympanoplasty." *Id.* at 18. Plaintiff states that Dr. Flaiz told him this as well. Mendenhall Decl., ECF 35 at 13. Plaintiff declares that, as of August 2024, he has not received this surgery. *Id.* He attests that he has hearing loss and tinnitus. *Id.*

On February 25, 2023, AIC George was reassigned to work in the kitchen on the same shift as Plaintiff. Declaration of Liza Emory ("Emory Decl."), ECF 34 ¶¶ 22, 24 (filed under seal). Plaintiff states that, as a result, he suffered an anxiety attack and had to be escorted back to his housing unit. Mendenhall Decl., ECF 35 at 13. A few weeks later, Plaintiff declares that Ms. Hartman "tried to once again rehire AIC George onto [Plaintiff's] shift." *Id.* at 14.

Plaintiff commenced this action in August 2023. Compl., ECF 1. In July 2024, Defendants filed their Motion for Summary Judgment. ECF 25.

## LEGAL STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the

non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

This Court construes Plaintiff's filings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that documents filed by a self-represented litigant must be liberally construed, and the complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" (citation omitted)); *see also* Fed. R. Civ. P. 8(e).

**B. Qualified Immunity**

In evaluating whether a defendant is entitled to qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Either question may be addressed first, and if the answer to either is "no," then the state actor cannot be held liable for damages. *See Pearson*, 555 U.S. at 236. The "qualified immunity analysis remains objective even when the constitutional claim at issue involves subjective elements." *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 674 (9th Cir. 2021) (citation omitted).

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015) (citations omitted). "The dispositive question is whether the violative

nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (cleaned up). As the "Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)). The Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

## DISCUSSION

This Court first addresses whether the Eleventh Amendment bars Plaintiff's claims. This Court then turns to Plaintiff's Fourteenth Amendment Claims, and Plaintiff's Eighth Amendment claims for inadequate medical care and failure to protect.

### A. Eleventh Amendment Immunity

Defendants argue that "all of Plaintiff's claims" are barred by the Eleventh Amendment. Mot., ECF 25 at 14–15. The Eleventh Amendment bars claims for damages against a state official acting in their official capacity. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). It does not, however, bar claims for damages against state officials in their personal capacities or claims against state officials in their official capacities for "prospective injunctive relief." *Id.* at 473 n.5; *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

Plaintiff sues Defendants in their official capacities under 42 U.S.C. § 1983. Compl., ECF 1 at 2–4. Plaintiff requests damages and injunctive relief. *Id.* at 9 (requesting damages and an "increase" in "security measures" and "better vett[ing]" of AICs "who apply for jobs in areas with weapons, or items easily weaponized"). Because Plaintiff is pro se, this Court construes Plaintiff's § 1983 suit for damages to be against Defendants in their *individual* capacities. *Hafer*

*v. Melo*, 502 U.S. 21, 31 (1991) (holding that state officials may be sued in their individual capacities for damages under § 1983); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("[W]hen a plaintiff sues a defendant for damages, there is a presumption that he is seeking damages against the defendant in his personal capacity" since an official capacity claim for damages would be barred). While Plaintiff's Complaint states that he is suing Defendants in their official capacities alone, this Court recognizes that Plaintiff, "acting *pro se*, did not understand the legal significance between bringing claims against [Defendants] in their official versus personal capacities." *Mitchell*, 818 F.3d at 442.

As to Plaintiff's request for injunctive relief, this Court construes Plaintiff's official-capacity claims to be brought under *Ex parte Young*, 209 U.S. 123 (1908), an exception to the Eleventh Amendment, and not § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state officials may not be sued in their official capacities under § 1983). The injunctive relief that Plaintiff requests appears to be entirely "prospective" such that it is in this Court's remedial power to award. *Edelman*, 415 U.S. at 677. Summary judgment is not warranted on Eleventh Amendment grounds.

**B. Fourteenth Amendment Claims**

Defendants argue that the Fourteenth Amendment does not apply to Plaintiff's claims as a matter of law. Mot., ECF 25 at 13–14. This Court agrees, and construes Plaintiff's Fourteenth Amendment claims as Eighth Amendment claims. "Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067–68 (9th Cir. 2016); *see also Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (holding same for medical care claims).

Plaintiff is a "[c]onvicted and sentenced state prisoner." Compl., ECF 1 at 5. As a result, Plaintiff's lawsuit is properly brought under the Eighth Amendment.

## C.  Eighth Amendment Claims

### 1.  Medical Care Claim

Defendants argue that Plaintiff failed to exhaust his administrative remedies for his medical care claim because he did not "grieve any medical treatment, or identify any medical providers in his grievances." Mot., ECF 25 at 4–7. Plaintiff concedes that he "failed to exhaust [his] administrative remedies on [his] medical claim," but explains that he was "following advice of legal counsel." Resp., ECF 35 at 5–6.[1]

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983[2]] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under the PLRA is "mandatory," *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), but administrative remedies need only be exhausted if they are "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016). To be "available," the grievance procedures must be "capable of use" to obtain relief. *Id.* However, "a court may not excuse a failure to exhaust, even to take 'special circumstances' into account." *Id.* at 639.

---

[1] Plaintiff also argues that he included his medical claim "as an addendum" to his other grievance. Resp., ECF 35 at 5. But nowhere in the addendum did Plaintiff allege that he received inadequate medical care. *See* Declaration of Sarah Cunha ("Cunha Decl."), ECF 27 ¶ 28. Regardless, Plaintiff has not provided evidence that an addendum is sufficient under EOCI's grievance system.

[2] To the extent that Plaintiff seeks injunctive relief relating to his medical care claim, the PLRA's exhaustion requirement also applies to Plaintiff's *Ex parte Young* claim. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) (holding that prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) "must first exhaust inmate grievance procedures").

At the summary judgment stage, Defendants bear the burden of showing that EOCI had an administrative process "generally available" to Plaintiff for handling medical care grievances and that he failed to exhaust it. *See Fordley v. Lizarraga*, 18 F.4th 344, 350–51 (9th Cir. 2021). Defendants have done so. *See* Cunha Decl., ECF 27 ¶¶ 9–23 (outlining grievance process and Plaintiff's prior grievances); Resp., ECF 35 at 5 (conceding failure to exhaust administrative remedies). Plaintiff's grievances related solely to his attack and AIC George's reassignment to the kitchen, not his medical care. *See* AIC Complaint History, ECF 27, Ex. 3. It is immaterial that Plaintiff did not "identify any medical providers in his grievances." Mot., ECF 25 at 6–7; *Jones*, 549 U.S. at 219 ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."). Rather, Plaintiff's difficulty is that he did not reference his medical treatment in any way, and he filed his grievance as "Non-Medical."

The burden then shifts to Plaintiff to show that "something in his particular case made the generally available administrative remedies effectively unavailable to him." *Fordley*, 18 F.4th at 351. Plaintiff's assertion that he was following counsel's advice is insufficient to show that the administrative remedies were unavailable, and this Court lacks any discretion to consider any special circumstances. *Ross*, 578 U.S. at 632. Plaintiff has thus failed to exhaust the available administrative remedies on his medical care claim. Summary judgment is granted to Defendants on Plaintiff's medical care claim.

### 2.  Failure-to-Protect Claims

The Supreme Court has held that "[p]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (cleaned up). The Ninth Circuit has held that this right is clearly established for qualified immunity purposes. *Castro*, 833 F.3d at 1066–67; *see also Harpole v. Bos.*, No. 2:22-CV-01033-HZ, 2023 WL 5806250, at *8 (D. Or. Sept. 4, 2023) ("In failure to protect cases, a plaintiff need not point

to caselaw that traces the precise circumstances of the case at hand to show that the defendants violated clearly established law." (cleaned up)). This Court now addresses whether Plaintiff has provided sufficient evidence that Defendants' conduct violated this constitutional right.

To establish a failure-to-protect claim in violation of the Eighth Amendment, a plaintiff must show (1) that the deprivation is objectively "sufficiently serious," meaning that "he is incarcerated under conditions posing a substantial risk of serious harm[;]" and (2) that the official acted with "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference requires a showing that prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. This knowledge can be presumed if the risk was "obvious." *Id.* at 842.

Plaintiff first argues that Defendants Campos, Clark, Hartman, Griner, and Emory violated his constitutional rights by hiring AIC George in the kitchen. Resp., ECF 35 at 5. The undisputed facts show that Defendant Emory screened AIC George prior to his assignment in the kitchen. Emory Decl., ECF 34 ¶¶ 4, 8, 10, 16 (filed under seal). As part of this screening, Defendant reviewed AIC George's misconduct history, and approved him to work in the kitchen since it had been over eighteen months since his most recent assault misconduct. *Id.* ¶¶ 16–17. AIC George did not have any misconducts between his hiring in the kitchen and his assault on Plaintiff. *Id.* ¶ 19. Plaintiff has not shown that allowing a properly screened AIC to work in the kitchen posed a substantial risk of serious harm. In addition, Plaintiff has not provided evidence that any Defendant knew of and disregarded an excessive risk to Plaintiff's safety by assigning AIC George to the kitchen. Summary judgment is granted to Defendants on this claim.

Plaintiff next argues that Defendants violated his constitutional rights by reassigning AIC George to the kitchen on Plaintiff's shift and schedule after the attack. Resp., ECF 35 at 5.

However, as Defendants point out, the PLRA bars this claim. Mot., ECF 25 at 13. Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). This physical injury "need not be significant but must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002). Plaintiff provided evidence that, as a result of AIC George's reassignment, he suffered an anxiety attack. But Plaintiff has not argued or provided evidence that he suffered a physical injury connected with AIC George's reassignment to the kitchen. Defendants are entitled to summary judgment on Plaintiff's failure-to-protect claim based on AIC George's reassignment.

Finally, Plaintiff argues that Defendant Campos failed to protect Plaintiff by not reporting Defendant Campos' observations of AIC George's anger issues as required under Department of Corrections ("DOC") policy 20.6.4. Resp., ECF 35 at 4, 6. This policy requires that supervisors "[t]ake immediate action to correct any unsafe situations or equipment and to report it immediately to their supervisor." ECF 35-1 at 5. Plaintiff also asserts that Defendant Campos violated DOC Policy 40.1.6, Resp., ECF 35 at 4, which requires that staff immediately notify their supervisors about certain incidents. ECF 35-1 at 1–2. Defendant Campos denies stating "I've seen [AIC George] act that way in line" to Plaintiff and maintains that he "did not have any knowledge about AIC George having anger issues or violent tendencies." Campos Decl., ECF 26 ¶¶ 8, 10, 12. What Defendant Campos told Plaintiff is a genuine dispute of material fact. Relatedly, it is a jury question whether Defendant Campos violated either policy by failing to report any incidents he witnessed involving AIC George.

Drawing reasonable inferences and resolving disputes of fact in Plaintiff's favor, a reasonable jury could find that Defendant Campos had witnessed AIC George's anger issues

before AIC George attacked Plaintiff and that he had not reported his observations. A reasonable jury could further find that Defendant Campos knew that Plaintiff faced a serious risk that AIC George would harm Plaintiff—or another prisoner[3]—given AIC George's known history of anger issues, or that the risk was "obvious." *Farmer*, 511 U.S. at 842. A reasonable jury could find that Defendant Campos then disregarded this risk by failing to document AIC George's anger issues as required by prison policy. While policy violations do not alone establish a federal constitutional violation, *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009), the policies here are directly related to inmate safety, and failing to comply with these may pose obvious safety risks. Had Defendant Campos reported the asserted anger issues, depending on the date of their occurrence, AIC George may not have been allowed to work in the kitchen where he ultimately attacked Plaintiff. *See* Emory Decl., ECF 34 ¶¶ 8–9. ("If a level 1 AIC's misconduct history contains recent violent or assaultive misconduct, they are not permitted to be assigned to the kitchen. If an AIC has a prior misconduct for assault, they must have at least 6 months of clear conduct and be a level 2 before they are eligible to work in the kitchen.") (filed under seal). By failing to document this risk, a reasonable jury could find that Defendant Campos showed deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment.

This Court cannot, on the present evidentiary record, find that Defendant Campos is entitled to qualified immunity as a matter of law. The issue of whether Defendant Campos' actions violated a clearly established constitutional right turns on his knowledge, which this Court has already found is subject to a genuine dispute of material fact. Summary judgment is not appropriate on Plaintiff's failure-to-protect claim against Defendant Campos.

---

[3] It is immaterial whether Plaintiff "face[d] an excessive risk of attack for reasons personal to him or because all prisoners in his situation face[d] such a risk." *Farmer*, 511 U.S. at 843.

However, to the extent that Plaintiff brings claims against Defendants Clark, Hartman, Griner, and Emory for "allowing an unstable AIC to go unreported," Resp., ECF 35 at 5, Plaintiff has failed to create a genuine issue of material fact as to each Defendant's knowledge and personal involvement in failing to report. Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Summary judgment to Defendants is also warranted on Plaintiff's claim against Defendant Washburn. "A supervisor is only liable [under § 1983] for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* Plaintiff argues that "Defendant Washburn is involved as she is the superintendent of EOCI and responsible for her employees." Resp., ECF 35 at 9. However, the Supreme Court has held that vicarious liability is insufficient under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff has not provided evidence that Defendant Washburn, through her own actions, violated the Constitution. *See id.*

## CONCLUSION

Defendants' Motion for Summary Judgment, ECF 25, is GRANTED in part and DENIED in part. Summary judgment is granted to Defendants on Plaintiff's claims against Defendants Griner, Hartman, Clark, Emory, Gillespie, and Washburn, and is denied on Plaintiff's claim against Defendant Campos. Plaintiff and Defendant Campos are ORDERED to confer and submit a status report and proposed pretrial deadlines within thirty days of this Opinion and Order.

///

///

///

///

**IT IS SO ORDERED.**

DATED this 2nd day of December, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge